## ALABAMA IRON & RAILWAY CO. v. AUSTIN et al.

(Circuit Court of Appeals, Fifth Circuit. May 23, 1899.)

No. 786.

1. EQUITY—JURISDICTION—NATIONAL BANKS—PREFERENCES.

Equity has jurisdiction of a bill by a receiver of a national bank to set aside a transfer of notes made by the bank to prefer a creditor.

2. SAME—PLEADING AND PROOF—VARIANCE.

A bill by the receiver of a bank to set aside a preferential transfer of notes, in violation of Rev. St. § 5242, is not sustained by proof that the notes were put into the transferee's hands for payment by him, and that, instead of paying them, he wrongfully kept them.

3. SAME—EVIDENCE—RES JUDICATA.

Where an order dismissing a law case is pleaded in bar in an equity suit, and no proof is offered except the order itself, defendant cannot show the nature of the law case by affidavit after trial.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

In April, 1893, R. W. Austin, as receiver of the First National Bank of Sheffield, Ala., filed his bill of complaint in the United States circuit court for the Northern district of Alabama against the Alabama Iron & Railway Company. He alleged that he was duly appointed by the comptroller of the currency to the office of receiver of said bank; that on the 11th day of November, 1889, the First National Bank of Sheffield was indebted to the Sheffield & Birmingham Coal, Iron & Railway Company in the sum of $10,000; that at that time said First National Bank was largely indebted, and that the amount of its liabilities exceeded the value of its assets; that this fact was known to the president, cashier, and directors of the bank, and it was known and apparent to said officers that said First National Bank would presently be unable to meet its obligations, and that it would soon be obliged to suspend its business; that in contemplation of such insolvency, and with a view of giving preference to Jacob G. Chamberlain, receiver of the Sheffield & Birmingham Coal, Iron & Railway Company, over its other creditors, and also with a view and for the purpose of preventing the application of its assets in the manner prescribed by the laws of the United States, said First National Bank did on the 11th day of November, 1889, transfer, assign, and deliver to said receiver, as collateral to secure its said previous debts, certain seven notes of H. B. Tompkins, aggregating $8,506.27; that Chamberlain was appointed by said court receiver of said Sheffield & Birmingham Coal, Iron & Railway Company, which was subsequently dissolved and reorganized under the name and style of the Alabama Iron & Railway Company; that said notes were by said receiver, Chamberlain, delivered to the defendant corporation, the Alabama Iron & Railway Company, and that said notes are held by said defendant corporation, and were received by it, with full notice of all the facts above stated; that the defendant corporation also holds and owns the said claim against the said bank; that the defendant corporation now holds said assets, and claims the right to apply them or the proceeds of their collection to the said debts of said First National Bank to the defendant corporation, and that, if the defendant corporation is allowed to do this, it will be an illegal preference over the other creditors of said First National Bank; that the assets of said bank are insufficient to pay its debts; that the said transfer to the defendant corporation was fraudulent and void; and that the said assets are the property of the orator, Richard W. Austin, to be administered by him as such receiver. The bill of complaint required the defendant corporation to answer, but without oath, the following interrogatories: Whether the defendant corporation, on the 11th of November, 1889, had on account the claim against the First National Bank of Sheffield, and, if so, the amount thereof; whether or not the notes were transferred to the defendant corporation, and, if so, when and on what consideration; whether or not at the time of said transfer the First National Bank of Sheffield was insol-

vent; whether or not at the time of said transfer it was in contemplation of insolvency; whether or not any of said notes so transferred to the defendant corporation have been collected, and, if so, what sums were collected. The bill of complaint prayed that the court decree the transfer of said notes to the defendant corporation to be null and void, and that the same are still the property of said First National Bank; that the defendant corporation be required to deliver the notes to the complainant, or to pay him the proceeds of the collection thereof; that the complainant have a decree against the defendant corporation for the said assets; and that the complainant recover the same, to be administered and applied to the payment of the claims of the creditors of said First National Bank. On October 10, 1894, the defendant corporation filed its answer. It admitted that on the 11th day of November, 1889, the said First National Bank was indebted to the Sheffield & Birmingham Coal, Iron & Railway Company in a large amount of money. It admitted that said bank was at that time largely indebted; but whether its liabilities exceeded the value of its assets, and whether this fact was known to the president and other officers of the bank, and whether it was known and apparent to the officers of the bank that it would soon be obliged to suspend its business, the respondent averred that it did not know, and asked that strict proof of said allegations be required. The respondent admitted that the notes were delivered to Chamberlain, as receiver, but denied that they were transferred in contemplation of insolvency, or with a view of giving a preference to Chamberlain, as receiver. The respondent averred that it was informed and believed that the notes were transferred to Chamberlain in the usual course of business, and denied that they were transferred with the view and for the purpose of preventing the application of the assets of the bank in accordance with the laws of the United States. The respondent further answered that a day or two prior to the 11th day of November, 1889, Chamberlain, as receiver, made a deposit with said bank of a large amount of New York exchange, which was to be collected for him by the bank, and was to be delivered to him when collected; that the cashier of the bank, without instructions to that effect, credited the account of Chamberlain with the amount of such deposit; that on said 11th day of November, 1889, Chamberlain, learning that some drafts drawn by said bank on its New York correspondent had been protested, went to the cashier of said First National Bank, and telegraphed to its president, who was then in New York, and informed both of them that he would stop payment of said drafts if the same were still unpaid, and, if his said drafts were paid, he would demand the proceeds of said collections and the payment of his account; that the cashier of said bank informed him, when he was about to withdraw the amount to his credit, that there had been protests made of one of its papers, but that the same had been made good, and that the bank was in good condition, and, said Chamberlain insisting on drawing out the amount to his credit, the cashier informed him that he had sufficient funds to pay his deposit, but that the payment of such a large amount of money was more than the bank had expected, and its withdrawal would be a great inconvenience, and would temporarily cripple the institution; that Chamberlain insisted on withdrawing the balance and stopping the payment of his drafts, unless the bank would secure him against loss; whereupon the cashier delivered to him said notes as collateral security for the amount of his account. The respondent denied that the Sheffield & Birmingham Coal, Iron & Railway Company was dissolved, and reorganized under the name of the Alabama Iron & Railway Company, but that the fact is that the property of the former corporation was, by order of said court, sold and purchased by one Napoleon Hill, trustee, and, while it is true that a large part of the property formerly owned by said Sheffield & Birmingham Coal, Iron & Railway Company was subscribed to and became the property of the respondent, yet the respondent denies that said notes were delivered to it by Chamberlain, as receiver, but the same were sold and delivered by the officer of said court, who made sale thereof under its decree to the purchaser thereof, and the notes came in the possession of the respondent by being subscribed to its capital stock for valuable consideration, and without any notice to it of the facts alleged in the bill. The respondent admits that it holds said notes, and claims the right to apply the proceeds of their collection to the debt of said First National Bank, but it denies that such action would give it an illegal preference

over the other creditors of said bank. The respondent admits that the assets of the bank are insufficient to pay its debts in full, but denies that the transfers to the respondent are fraudulent or void, or that the notes are the property of the complainant as receiver. In answer to the interrogatories, the respondent said that it did not at any time have an account or claim against the First National Bank, except as transferree of the account of the Sheffield & Birmingham Coal, Iron & Railway Company, which, on the 11th day of November, 1889, amounted to ―――― dollars; that the notes were transferred to the respondent on the ―――― day of ――――, and the consideration was ――――; that, at the time of the transfer of the notes to the respondent, the bank was insolvent, and had been in the hands of complainant, as receiver, for a considerable time; that none of the notes have been collected. On November 1, 1895, it was agreed in open court "that the defendant have leave to amend his answer herein, and to file demurrers, and that 60 days' notice be granted for submission of proof, and that decision may be had in vacation upon arguments or briefs to be submitted within 90 days." On November 12, 1895, the defendant demurred, averring that there is no equity in the bill; that it appears by the allegations of the bill that the complainant has a complete and adequate remedy at law; that it appears by the bill that the notes were never in the possession of said bank after Richard W. Austin was appointed receiver thereof; and that the defendant derived title to and possession of said notes from said Chamberlain, receiver of the Sheffield & Birmingham Coal, Iron & Railway Company. On November 12, 1895, the defendant also filed a plea in bar, averring that before the filing of said bill said complainant had filed in said court, on the common-law side thereof, an action of detinue to recover from the defendant upon precisely the same cause of action as is set forth in said bill of complaint; that said common-law cause was by complainant voluntarily dismissed out of the said court on the 14th day of December, 1894; and that the dismissal of said common-law cause operated as a common-law retraxit of the cause of action upon which it was founded. The replication was filed on November 15, 1895. On April 14, 1898, the parties agreed that the cause might be submitted for decree in vacation, and it was stipulated that the defendant might on the trial of the cause "insist upon the matter of defense set forth in the demurrer, plea in bar, and answer without waiving any of the rights of defense in either of said pleadings." The cause came on to be heard before the judge, in vacation, by consent of parties. The only proofs for the complainant were the depositions of one T. L. Benham and of Richard W. Austin, the complainant. Benham testified that he was the cashier of the bank; that on November 11, 1889, the bank held among its assets the seven notes of H. B. Tompkins; that on or about that day he received a telegram from the president of the bank, who was then in New York City, instructing him to compute the interest on the notes, and to take them to Chamberlain, and get a check for them; that he complied with the instructions by presenting the notes to Chamberlain for payment; that Chamberlain requested him to hold the notes a few days, and that he would let the witness know then whether he would pay them; that, after waiting a few days, he called on Chamberlain a second time; that Chamberlain requested him to leave the notes with him, saying that he would hold them and consult certain directors of his company, whom he was expecting to arrive soon; that he called on Chamberlain a third time, expecting to receive payment of the notes; that Chamberlain then informed him that said directors had instructed him to retain possession of the notes, and to hold them as collateral security against the amount which the bank owed him as receiver; that 18 days afterwards, namely, on November 29, 1889, the bank failed, Chamberlain retaining possession of the notes. Richard W. Austin, the complainant, testified that, aside from the notes in controversy, the assets of the bank will pay about 25 per cent., and that, if the notes should be recovered and the amounts claimed upon them, the assets will pay about 30 per cent. This was all the evidence offered for the complainant.

The defendant's proof consisted only of an order of dismissal of a cause by Richard W. Austin, as receiver of said bank, against the Alabama Coal, Iron & Railway Company. By an affidavit of H. B. Tompkins, which is found in the record, made on the 18th of November, 1898, evidently after the trial of this cause below, it would appear that all the original papers in the present cause,

as also in the common-law action referred to in the plea in bar, were lost prior to the trial below; that an order was made on April 22, 1897, to re-establish the lost papers; that the papers in this equity cause were re-established, but that the papers in the common-law cause were not. The final decree in this cause was signed on August 15, 1898. It recites that the cause was heard and determined "upon the bill, demurrer, answer, plea, depositions, and other documents on file." The decree adjudged the assignment of said notes to be fraudulent and void, and the same was set aside. The decree further proceeded to adjudge "that complainant have and recover of the defendant the sum of $8,506.27 for the principal of the seven notes, with $4,593.37 as interest at 6 per cent. per annum, * * * making in the aggregate the sum of $13,099.64; and, if the sum is not paid within 30 days, execution should issue on complainant's demand, provided, however, that the delivery of all said notes to the clerk of this court within 30 days shall be accepted in full satisfaction of this decree." The defendant corporation appealed, assigning for error, among other matters, with much particularity and detail, that the demurrer and plea in bar should have been sustained, and that there is no evidence to sustain the decree; also that the decree is not in accordance with the prayer of the bill. In the brief on behalf of appellant it is said: "The scope and object of the prayer was for the recovery of the seven notes, or for the proceeds of the same if they had been collected. * * * A decree for a specific sum of money, without proof of the value of the past-due notes, and when no part of the prayer was for the money value of the notes, unless they had been collected, was obviously erroneous."

H. B. Tompkins and R. C. Alston, for appellant.

M. F. Caldwell, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

PARLANGE, District Judge, after stating the facts, delivered the opinion of the court.

The appellee contends that, as the demurrer and the plea were filed after the answer, they came too late, and should not be noticed. But it is clear that the complainant consented that the demurrer and the plea might be filed and be passed upon, and he cannot now be heard to object that they were improperly or unseasonably filed. The trial judge evidently was of opinion, and properly so, that the demurrer and the plea were before the court by consent of parties, and in the decree he passed on the demurrer and the plea, as well as on the merits. But there was no force in the demurrer. The bill made out a sufficient case to authorize a court of equity to take jurisdiction. As to the plea, whatever merit it may have had, the defendant failed to offer any proof in its support, and it was therefore proper to overrule it. The order dismissing the law case, standing alone, did not substantiate the plea. The attempts to show by an affidavit made after the trial of this cause the nature of the law action which was dismissed cannot, of course, avail the appellant. On the merits, we are of opinion that the decree of the lower court should be reversed, for the reason that the complainant failed to prove his case. Three different theories as to the facts and circumstances of this case are presented: The bill charges substantially that the notes were transferred by the bank in contemplation of bankruptcy and otherwise, in violation of Rev. St. U. S. § 5242, for a pre-existing debt of the bank. The answer avers, in effect, that the transfer was not to secure a pre-existing debt, but to secure the collection of drafts

by the bank. The proof would make a case where the notes were put in the hands of the receiver of the Sheffield & Birmingham Coal, Iron & Railway Company for payment by him, and where, instead of paying the notes, he kept them without right or authority. Inspection of the testimony of the two witnesses, which constitutes the entire evidence for the complainant, shows that he failed to prove the essentials of his bill of complaint.

In Railroad Co. v. Bradleys, 10 Wall. 299, it was said:

"It is hardly necessary to repeat the axioms in the equity law of procedure that the allegations and proofs must agree, that the court can consider only what is put in issue by the pleadings, that averments without proofs and proofs without averments are alike unavailing, and that the decree must conform to the scope and object of the prayer, and cannot go beyond them."

The decree appealed from is reversed, and the cause is remanded to said circuit court, with instructions to dismiss the bill.